UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KAREN STONE,                                  )  | |
|                                                             )  | |
|     Plaintiff,                 )  | |
|                                                             )  | |
|     v.                              )  | CAUSE NO. 1:05-CV-114 |
|                                                             )  | |
| INDIANA POSTAL & FEDERAL         )  | |
| EMPLOYEES CREDIT UNION, also known as  )  | |
| PINNACLE CREDIT UNION,             )  | |
|                                                             )  | |
|     Defendant.             )  | |

**OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Karen Stone believes that Defendant Indiana Postal & Federal Employees Credit Union, also known as Pinnacle Credit Union ("Pinnacle"), discriminated against her based on her sex and alleged disability, and then retaliated against her when it terminated her employment. (Compl. ¶ 4.)  Thus, she filed the instant suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*[1] (*Id.*)

Pinnacle moved for summary judgment on all of Stone's claims (Docket # 7), contending that because Pinnacle allegedly employed less than fifteen employees during the relevant time

---

[1]Stone also initially advanced a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 621 *et seq.*, in her Charge of Discrimination filed with the Equal Employment Opportunity Commission (EEOC), which was incorporated by reference into her complaint. (*See* Compl. ¶ 4(a), Ex. A.)  Stone has since abandoned this claim, conceding that Pinnacle clearly falls below the twenty-employee threshold necessary to bring a claim under the ADEA. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.)
    Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

period, Pinnacle was not an "employer" under Title VII or the ADA and thus cannot be liable on Stone's discrimination and retaliation claims. (Def.'s Br. in Supp. of its Mot. to Dismiss and/or Summ. J. at 4.)  Since the record supports Pinnacle's arguments, its motion for summary judgment will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Pinnacle is a state-chartered, federally-insured credit union with two branches in Fort Wayne, Indiana. (Aff. of Don Simpson ¶ 4.)  Stone began her employment with Pinnacle on November 4, 1996, as head teller at Pinnacle's main branch, and was ultimately terminated by Pinnacle on September 7, 2004. (*Id*. ¶ 5; Compl. ¶ 4.)  While Stone has submitted a long list of grievances to support her discrimination and retaliation allegations, they are ultimately irrelevant, as Stone stumbles over a threshold issue that every plaintiff pursuing an ADA or Title VII claim must hurdle – that the defendant must employ fifteen or more employees during the relevant time period to be considered an "employer" under Title VII or the ADA.  Stone concedes that the only way Pinnacle can reach this minimum requirement is if the members of Pinnacle's Credit Committee are included in the calculation. (Pl.'s Resp. at 4.)

Pinnacle's Credit Committee arises out of its by-laws and is comprised of three individuals who are elected by the Pinnacle credit union membership for terms of three years.[3] (Def.'s Reply Br. in Supp. of Mot. for Summ. J. at Ex. 2.)  The function of the Credit Committee

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Stone, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

[3] Indiana Code Section 28-7-1-15 provides that a credit union's by-laws "may provide for a credit committee; and . . . must state whether the credit committee is to be elected by the members or appointed by the board of directors."  Here, Pinnacle's by-laws provide that the Credit Committee is to be elected by its credit union membership, not its board of directors. (Def.'s Reply Br. at Ex. 2.)

2

is to meet, together with Pinnacle's chief executive officer and loan officer, on a weekly basis to (1) analyze Pinnacle's consumer loans that fall outside the standard loan limits, and (2) review appeals by members who have been deemed not credit-worthy by Pinnacle. (Simpson Aff. ¶ 12.) The date and location of the Credit Committee meetings are determined by Pinnacle and are generally held each Wednesday at 11:30 a.m., ending at noon or thereafter. (Aff. of Karen Stone ¶ 7.) During the period of June 2003 to May 2004, Pinnacle paid the Credit Committee members compensation one time annually at the rate of $4.00 per meeting, issuing a Form 1099 to the members; however, as of May 2004, Pinnacle ceased paying Credit Committee members compensation, fees, or reimbursement of any kind.[4] (Simpson Aff. ¶¶ 15, 16.) The Credit Committee in 2003 and 2004 consisted of a retired United States Postal Office worker, a full-time employee of the United States Postal Office, and a full-time employee of the Air National Guard. (*Id*. ¶¶ 17-21; Stone Aff. ¶ 7.)

From a procedural perspective, Stone filed a Charge of Discrimination with the EEOC on September 23, 2004, alleging that Pinnacle discriminated against her on the basis of her age and a perceived disability, and then retaliated against her when it terminated her employment. (Compl., Ex. A.) On December 22, 2004, the EEOC dismissed Stone's Charge and issued her a Notice of Suit Rights letter (*id*., Ex. B); Stone then filed her complaint on March 21, 2005, in the Allen Superior Court, dropping the age discrimination claim and adding a claim of gender discrimination (*id*. ¶ 4(d)). Pinnacle removed Stone's complaint to this Court on March 28, 2005, on the basis that the complaint raised federal questions. (Docket # 2.)

### III. STANDARD OF REVIEW

---

[4]In fact, Pinnacle's by-laws state that "[n]o member of this committee, as such, shall receive any compensation." (Def.'s Reply Br. at Ex. 2.)

3

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### IV. DISCUSSION

In order to be considered an "employer" under the ADA, and thus fall within its scope, the employing person or entity must be "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A).  The definition of "employer" under Title VII is identical to the definition under the ADA. 42 U.S.C. § 2000e(b).  The plaintiff carries the burden of establishing that the defendant has the requisite number of employees for ADA or Title VII coverage. *Mizwicki v. Helwig, D.C., P.C.*, 196 F.3d 828, 831 (7th Cir. 1999); *Chavero v. Local 241,* 787 F.2d 1154, 1155 (7th Cir. 1986); *Owens v. S. Dev. Council, Inc.*, 59 F. Supp. 2d

1210, 1213 (M.D. Ala. 1999).

  Pinnacle argues that it is not an "employer" for purposes of the ADA or Title VII and thus cannot be liable for Stone's claims, because during 2004 and 2003 (the current and preceding calendar years with respect to the "year in which the alleged discrimination occurred") there were only two pay periods in which Pinnacle employed fifteen or more employees, with the remainder of the weeks ranging between twelve and fourteen employees. (Def.'s Reply Br. at 7-8); *Komorowski v. Townline Mini-Mart and Rest.*, 162 F.3d 962, 966 (7th Cir. 1998).  Stone, however, argues that Pinnacle did employ at least fifteen or more employees during the relevant time period because Pinnacle should have included the three members of Pinnacle's Credit Committee in its calculations. (Pl.'s Resp. at 4.)  As discussed *supra*, Stone concedes that this case boils down to just one issue – whether the three members of Pinnacle's Credit Committee constitute "employees" for purposes of the definition of "employer" under the ADA and Title VII. (*Id.*)  Accordingly, the Court will limit its analysis to this single issue.

  The ADA and Title VII define "employee" as "an individual employed by an employer." 42 U.S.C. §§ 2000e(f), 12111(4).  To further clarify this definition, the Supreme Court stated that the primary consideration in determining whether an individual is an "employee" for purposes of Title VII is whether an "employment relationship" exists. *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 206, 207, 212 (1997); *Chavero*, 787 F.2d at 1157; *see also Owens*, 59 F. Supp. 2d at 1214 (applying the "employment relationship" standard in an ADA case).  An "employment relationship" is most readily demonstrated by the "payroll method," that is, whether the individual appears on the employer's payroll. *Walters*, 519 U.S. at 206; *Mizwicki*, 196 F.3d at 831, 833.  However, the payroll method is not necessarily determinative, as "an individual who

5

appears on the payroll but is not an 'employee' under traditional principles of agency law, would not count toward the 15-employee minimum." *Walters*, 519 U.S. at 211-12 (internal citations omitted); *Owens*, 59 F. Supp. 2d at 1214.  Thus, the individual must ultimately satisfy the traditional common-law agency definition of "employee" to be considered to have an "employment relationship" with the alleged employer under Title VII and the ADA. *Walters*, 519 U.S. at 211-12 (internal citations omitted); *Owens*, 59 F. Supp. 2d at 1214.  The factors relevant to the common-law agency definition are:

> the hiring party's right to control the manner and means by which the product is accomplished . . . [;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992); *see also Walters*, 519 U.S. at 211.  In this common-law agency inquiry, "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive."[5] *Nationwide*, 503 U.S. at 324.

Stone's contention that the Credit Committee members should be counted as "employees" under Title VII and the ADA is quickly deflated under the payroll method analysis. The Credit Committee members did not appear on Pinnacle's payroll, as Pinnacle issued one check annually to them outside of the regular payroll services and ceased paying any compensation to them at all after May 2004.  This absence from the payroll, however, does not

---

[5]For purposes of determining whether a member of a board of directors is an "employee," some courts have encapsulated the common-law agency test into a three-factor inquiry: "(1) whether the director performed traditional employee duties; (2) whether the director was regularly employed by a separate entity; and (3) whether the director reported to someone higher." *Owens*, 59 F. Supp. 2d at 1216; *see also Chavero*, 787 F.2d at 1157.

necessarily ring the death knell for Stone's arguments.

Stone contends, and the Court and Pinnacle agree, that the term "employee" should be liberally construed with respect to the ADA and Title VII, *see Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 446 n.6 (2003); *Chavero*, 787 F.2d at 1156, and what is ultimately critical is not whether the Credit Committee members appear on Pinnacle's payroll, but rather whether an underlying "employment relationship" exists. *Walters*, 519 U.S. at 211-12 (agreeing with plaintiff that "what is ultimately critical . . . is the existence of an employment relationship, not appearance on the payroll"); (Def.'s Reply Br. at 4).  In making this argument, Stone attempts to draw a parallel between Pinnacle's treatment of the Credit Committee members and the treatment of temporary workers under the anti-discrimination statutes (Pl.'s Resp. at 4-5); temporary workers may be considered either temporary employees and thus included in the count toward the fifteen-employee threshold, or independent contractors and therefore excluded from the count. *See generally Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976 (10th Cir. 2002) (discussing the distinction between temporary employees and independent contractors with respect to the fifteen-employee threshold under the ADA). Therefore, in order to further ferret out if an "employment relationship" exists between Pinnacle and its Credit Committee members, the Court will assess and weigh the "incidents of the relationship," applying the common-law agency analysis. *See Walters*, 519 U.S. at 211-12; *Nationwide*, 503 U.S. at 324.

Under the common-law agency analysis, first it is significant that the Credit Committee members are not hired, fired, or disciplined in accordance with Pinnacle's normal policies and procedures; rather, they are elected for terms of years by Pinnacle's credit union membership

pursuant to its by-laws.  This means that in contrast to regular employees, Pinnacle management does not have control over the Credit Committee members.  Second, all of the Credit Committee members were engaged in full-time endeavors outside of Pinnacle – one of the members was a full-time retiree, and the other two members were employed on a full-time basis for other employers – characteristics not indicative of a normal employer-employee relationship.  Third, the Credit Committee has a discrete, specific function – to review certain consumer loans and hear member appeals; there is no indication that Pinnacle could, or would, assign other projects or traditional employee duties to the Credit Committee.  Fourth, when the Credit Committee members did receive compensation, they were paid only $4.00 per meeting regardless of the length of the meeting and after May 2004 received no compensation at all; it is difficult to believe that Pinnacle would pay the Credit Committee members less than minimum wage if they were performing traditional employee duties, much less issue them only one check per year.[6]  Furthermore, the Credit Committee members were not treated as employees from a tax perspective, and there is no evidence that they received any employee benefits.  All of these factors taken together paint a clear picture that the Credit Committee members are far from "employees."

Stone, nevertheless, argues that an "employment relationship" did exist because (1) Pinnacle controlled the date, time, and place of the meetings; (2) the duties delegated to the Credit Committee were performed on a weekly basis and were material to its operations; (3)

---

[6]Pinnacle has not disclosed information about the compensation, if any, paid to the Credit Committee members during the period of January 2003 to June 2003; however, because Stone's arguments and affidavit pertaining to the Credit Committee members solely discuss 2004, the Court deems that Stone has abandoned any argument pertaining to the Credit Committee members for 2003. *(See* Pl.'s Resp. at 2, 3; Stone Aff. ¶¶ 7, 11, Attachment A); see, *e.g., Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding that arguments not presented to the court in a response to a summary judgment motion are deemed waived).

Pinnacle had the ability to terminate the members from the Credit Committee; and (4) the Credit Committee members were paid on an hourly basis.  However, two of these arguments – that Pinnacle had the ability to terminate the members and that they were paid on an hourly basis – are mere conclusory, vague allegations in Stone's affidavit, allegations that Pinnacle effectively defeated by producing its by-laws, which explain in detail the organizational structure of the Credit Committee, and the affidavit of Don Simpson, President and Chief Executive Officer of Pinnacle, which explicitly describes the compensation paid to the members in 2003 and 2004. *See Payne*, 337 F.3d at 773 (emphasizing that an affidavit must be based on personal knowledge and set forth specific facts).  The remaining two factors asserted by Stone are clearly insufficient to tip the scales in her favor when compared to all of the factors discussed *supra* that overwhelmingly support Pinnacle's position that the Credit Committee members are not "employees."

Moreover, the characteristics of the Credit Committee are actually much more akin to those of an arm of the board of directors than those of traditional employees.  "While courts generally construe the term 'employee' broadly under all provisions of Title VII, members of boards of directors are not employees for purposes of Title VII coverage under any standards . . . ." *Chavero*, 787 F.2d at 1156 (finding that directors were not "employees" because they did not perform traditional employee duties and reported to no one other than itself); *Zimmerman v. N. Am. Signal Co.*, 704 F.2d 347, 352 (7th Cir. 1992), *overruled on other grounds*, *Walters*, 519 U.S. at 206-07 (emphasizing that "Congress did not intend the term 'employee' to include persons who are not more than directors of a corporation or unpaid, inactive officers.").  As discussed *supra,* the Credit Committee originates from Pinnacle's by-laws, and its members are elected by

9

the credit union membership for a term of office; the members perform one distinct function, not traditional day-to-day employee duties, and did not receive compensation of any significance. Moreover, the Credit Committee members were either full-time employees of other employers or retired from full-time work altogether. While a decision of the Credit Committee regarding a loan may be appealed to the Board of Directors, the credit union membership, not the Board of Directors, holds the authority to elect Credit Committee members pursuant to Pinnacle's by-laws. (Def.'s Reply Br. at Ex. 2); *see also* Ind. Code. § 28-7-1-15. Therefore, under the encapsulated common-law agency test used to determine whether a director is also an "employee" (set forth *supra* in note 5), Stone's assertions again clearly miss the mark.

In summary, no material dispute of fact that requires a trial exists in this case. The application of the payroll method analysis and the common-law agency analysis (both traditional and encapsulated) overwhelmingly implodes Stone's assertion that the three members of Pinnacle's Credit Committee should be included in the count of its employees; stated another way, on this record, no reasonable jury could conclude that these Credit Committee members were Pinnacle employees for purposes of either Title VII or the ADA, *see Walker v. Abbott Labs.*, 416 F.3d 641, 645 (7th Cir. 2005) (granting summary judgment in an employment discrimination case because no reasonable jury confronting the record presented by the plaintiff could conclude that the alleged discrimination occurred). Therefore, because Pinnacle employed less than fifteen employees in twenty or more weeks during 2003 or 2004, it cannot be liable for Stone's claims. *See* 42 U.S.C. §§ 2000e(b), 12111(5)(A). Accordingly, Pinnacle's motion for summary judgment will be granted.

## V. CONCLUSION

For the reasons given above, Defendant's motion for summary judgment (Docket # 7) is GRANTED.[7] The Clerk is directed to enter a judgment in favor of Defendant and against Plaintiff.  SO ORDERED.

Enter for this 26th day of September, 2005.

                                               /S/ Roger B. Cosbey
                                               Roger B. Cosbey,
                                               United States Magistrate Judge

---

[7] Also pending is Defendant's motion to strike portions of Stone's affidavit. (*See* Docket # 15, 17.)  The Court in this Opinion and Order considered the affidavit Defendant seeks to strike yet still found in Defendant's favor; therefore, Defendant's motion to strike (Docket #15) is hereby DENIED AS MOOT.